IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HORACE MANN INSURANCE COMPANY,

      Plaintiff,                                                     08cv0353

**ELECTRONICALLY FILED**

      v.

ROBERT ALBEN, MARIE ANN MCDONALD,

      Defendants.

**MEMORANDUM OPINION**

**I.    Introduction.**

Before the Court in this declaratory judgment action are cross-motions for summary judgment[1] filed on behalf of plaintiff, Horace Mann Insurance Company ("Horace Mann" or "insurer") and defendants Robert Alben and Marie Ann McDonald for underinsured motorist benefits under a policy of insurance issued for a 2003 Chrysler PT Cruiser owned and financed by both defendants and issued to Ms. McDonald as "insured," but listing both her and Mr. Alben, her live-in companion, on the declarations page as "listed drivers." Although the Court finds and declares that defendant Alben is not covered under the terms of the policy for underinsured motorist benefits, Pennsylvania's "reasonable expectations of the insured" doctrine nevertheless estops plaintiff from denying such benefits under all of the circumstances, because defendants reasonably expected that they had purchased such insurance for *both* listed drivers from Horace Mann's agent, the Mitchell Agency.

---

[1] At the Case Management Conference held on April 30, 2008, the parties agreed that if ADR (mediation was selected) proved unsuccessful, the case would be decided on cross motions for summary judgment.

## II. Factual Background.

Unless otherwise indicated, the following facts are not in dispute.

### A. The insurance relationship and policy.

Defendant McDonald has purchased automobile insurance from Horace Mann since the 1980's, initially through its agent Patricia Wolfe and then, commencing in 1990, through agent Wolfe's successor, Randy L. Mitchell, an employee and "captive" agent for Horace Mann, and his Mitchell Agency. All contacts between defendant McDonald and the Mitchell Agency regarding the purchase and changing of insurance policies were by telephone with members of the Mitchell Agency's staff.

In 2001, Ms. McDonald was the registered owner of a 1989 Pontiac and was the named insured on an insurance policy on the vehicle issued by Horace Mann through the Mitchell Agency. Since at least November 2001, Horace Mann and the Mitchell Agency were advised and knew that Mr. Alben lived with Ms. McDonald. Mr. Alben is not related to Ms. McDonald by blood, marriage or adoption.

On or about November 20, 2001, Ms. McDonald telephoned the Mitchell Agency to have Mr. Alben added as a driver to that insurance policy, and Horace Mann issued an amended declarations page adding him as a "listed driver." Ms. McDonald asserts that she advised the Mitchell Agency that Mr. Alben would be using the vehicle on a regular basis; plaintiff denies that the Mitchell Agency or Horace Mann were advised that he would be using the Pontiac on a "regular basis," although plaintiff's agents do not have evidence specifically contradicting defendants' "regular basis" assertions. In any event, this factual dispute is not material for purposes of the summary judgment motions.

On July 2, 2003, defendants jointly purchased a 2003 Chrysler PT Cruiser; title to the vehicle was registered in both defendants' names, and financing was obtained in both names. On July 1st and 2nd, defendant McDonald made at least two telephone calls to the Mitchell Agency to arrange for automobile insurance for the PT Cruiser. Ms. McDonald testified in her deposition that she advised staff at the Mitchell Agency at least twice that "Robert and I" were purchasing the PT Cruiser jointly; plaintiff denies that it knew that Ms. McDonald and Robert Alben were joint owners of the PT Cruiser because it has no record of any such telephone calls or the content of such calls, although it offers no evidence specifically disputing this assertion. See Plaintiff's Response to Defendants' Concise Statement of Material Facts and Additional Material Facts (doc. no. 38), Answer to ¶ 13.

Shortly thereafter, plaintiff issued a policy of insurance for the PT Cruiser, transferring the same coverage from the 1989 Pontiac to the new car.[2] The Complaint for Declaratory Judgment (doc. no. 1) attaches the policy as Exhibit A. The "Amended Declaration" page, *inter alia*, declares that Horace Mann has issued a "Continuous Renewal Policy," namely, "Readable Car Policy No. 37-23992470" on the PT Cruiser with "Underinsured Motor-Vehicle-Stacked Bodily Injury" insurance in the amount of $100,000 per person / $300,000 per accident; identifies "McDonald, Marie Ann" in the box for "Insured"; and declares the "Listed Driver(s)" as "McDonald, Marie Ann (Classed Driver) [-] Alben, Robert." Subsequently, Horace Mann issued

---

[2] There is some dispute about whether Mitchell Agency was advised and knew that the 1989 Pontiac was being traded or sold, and whether the policy on the Pontiac was to be simply transferred to the PT Cruiser, or a new or additional policy was to be written on the PT Cruiser. If the later, plaintiff concedes that its agents should have taken a new application, which would have required it to inquire about ownership and financing. The Court does not consider this dispute to be material.

an insurance card to Ms. McDonald listing her as the "insured."

The critical terms of the policy are as follows:

The Uninsured/Underinsured Motor Vehicle coverage provisions of the policy provide that Horace Mann "will pay damages which an **insured** is legally entitled to recover from the owner or operator of either an **uninsured motor vehicle** or **underinsured motor vehicle**, but not both, because of bodily injury: 1. sustained by an **insured**; and 2. caused by an accident." Bolded terms are defined in the policy, which also provides that "**Insured as used in this section** means: 1. **you**; 2. **your** relatives; 3. **Any other person** who, at the time of the accident, **is occupying: a. your car**, **a temporary substitute car, or a newly acquired car** . . . b. **a car not owned by you or any relative, but driven by you** . . . ." (UM/UIM Amendatory Endorsement; CC-N04PA1(7-96)). The Policy defines "Relative" to mean "a person **related to you by blood, marriage or adoption** who lives with you. It includes your unmarried and dependant child who is away at school." (Defined Words, CC-N00PA1(5-89)).

B.  **The accident.**

On October 14, 2003, Robert Alben was involved in an automobile-truck accident in the State of Ohio and sustained serious injuries while driving a tractor-trailer owned and insured by his employer, R&L Transfer, Inc., during the course of his employment. Following settlement of the tort action, Robert Alben submitted a claim for underinsured motorist benefits under the policy of insurance issued by Horace Mann and covering the 2003 Chrysler PT Cruiser owned by Robert Alben and Marie McDonald. Horace Mann denied this claim because he was not an "insured" as defined in the policy, and so was ineligible for underinsured motorist benefits.

### III. Summary Judgment Standards.

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions,

conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

**IV.     Legal Principles.**

**A.      Interpretation of the insurance policy.**

The parties agree that Pennsylvania law applies in this case, and it is this Court's obligation, therefore, to review the claims asserted under Pennsylvania law. The parties also agree that the Pennsylvania appellate courts have not been confronted with a case requiring them to construe the term "insured" in the same fact pattern presented herein, and this Court must extrapolate the interpretation of the policy by reference to analogous and more general principles of insurance contract law in Pennsylvania. *Nationwide Mut. Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098, 1101-02 (3d Cir. 1991). This Court recently summarized the rules for interpreting

Pennsylvania insurance contracts as follows:

> There is no dispute that Pennsylvania law governs the interpretation of the policy. The Supreme Court of Pennsylvania summarized the law of insurance contract interpretation in *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166 (2005), where it stated as follows:
>
>> [W]e begin our analysis by setting forth the well-established rules of insurance contract interpretation. "The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986) (*quoting Standard Venetian Blind Co.* (citations omitted)). When the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id*. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *See id.* "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Madison Construction Co.*, 735 A.2d at 106 (*quoting Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 519 A.2d 385, 390 (1986)). Finally, "[i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly." *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 662 (1982) (*quoting Moore v. Stevens Coal Co.*, 315 Pa. 564, 173 A. 661, 662 (1934)). Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

879 A.2d at 171. *See also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363-65 (3d Cir. 2004) (summarizing Pennsylvania law on the interpretation of insurance contracts).

The rule that any ambiguity must be resolved in favor of coverage for the insured recognizes that insurance policies are contracts of adhesion between parties of usually unequal bargaining power, especially regarding the language of such contracts that has been drafted by the insurance industry, *McMillan v. State*

7

> *Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1075 (3d Cir. 1990), and that "transactions between insurers and insureds are fundamentally different from those between parties to contracts as envisioned by the common law." *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309-10 (3d Cir. 1994).
>
> The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Tp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). In *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d at 1309, the United States Court of Appeals for the Third Circuit instructed courts applying Pennsylvania law to "examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured." The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *State Highway & Bridge Auth. v. E.J. Albrecht Co.*, 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981). A determination of whether a contract is ambiguous also is a question of law for the court. *Hutchison*, *supra*.

*Countryway Ins. Co. v. Slaugenhoup*, 2008 WL 509237, *3-*4 (W.D.Pa. 2008).

The Court agrees with plaintiff that the definition of "insured" in this case is not reasonably susceptible of different constructions or capable of being understood in more than one sense. Uninsured and underinsured motorist coverage covered injuries sustained in an accident to an "insured," and defines insured to include "you," "your relatives" defined as persons "related to you by blood, marriage or adoption," and any other persons who were, at the time of the accident, occupying "your car, a temporary substitute car, . . . a newly acquired car[, or] a car not owned by you or any relative, but driven by you . . . ." (UM/UIM Amendatory Endorsement; CC-N04PA1(7-96)). There is no dispute that Robert Alben is listed on the policy only as a "listed driver" and not as an "insured." Only Ms. McDonald is named as an "Insured" on the policy.

One's status as a "listed driver" does not qualify a person for the insurance benefits

provided in a policy of insurance to the "insured." See *Caron v. Reliance Ins. Co.*, 703 A.2d 63 (Pa.Super. 1997) (appellee "was not entitled to benefits as a class one insured because the insurance policy's designation of "you" as the insured referred to Caron International as the purchaser of the policy, not the drivers of the covered vehicles. . . . This Court has never held that simply being listed as a driver on an insurance policy automatically transforms an individual into a class one insured. In fact, we reached the opposite conclusion in *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 376 Pa.Super. 109, 545 A.2d 343 (1988), where we held that the plaintiff could not recover under her father's automobile insurance policy, though she was listed as a driver of one of the vehicles covered by the policy, when she was not driving a vehicle covered by the policy." footnotes omitted). See also *Budd-Baldwin*, 947 F.2d at 1104-05 (deceased passenger was not "resident relative" within meaning of policy, even though he was brother of insured and listed as an occasional driver, and his estate was not entitled to benefits; insurer accepted additional premium in exchange for extending "occasional driver" coverage to insured's brother, and, "that status does not entitle him to benefits under the facts presented."), citing, *inter alia, Amica Mut. Ins. Co.*

Defendants argues that the policy "should" be read to include underinsured motorist coverage for Robert Alben, since that was the intent of Ms. McDonald when she called to make arrangements for insurance on the new vehicle, but they do not muster much of an argument as to how the words of the policy quoted above are ambiguous in this regard or could be interpreted to support their position. The Court finds no such ambiguity in the terms of the insurance policy, and therefore, declares that the terms of the policy itself do not encompass underinsured motorist benefits for bodily injuries sustained in an accident by Mr. Alben while operating his employer's

9

vehicle. That is not, however, the end of the story.

B.     **Reasonable expectations of the insured.**

Traditional contract principles are not always applied in insurance transactions in Pennsylvania. *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1139 (Pa.Super. 2003), citing *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1351 (Pa. 1978); see also *Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 136 (3d Cir. 2005). The guiding principle is the reasonable expectations of the insured, not the literal policy language. Under Pennsylvania law, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may prevail over the express language of the insurance contract. *Bensalem Tp.*, 38 F.3d at 1309. Courts must examine the dynamics of the insurance transaction to ascertain the reasonable expectations of the consumer. See, e.g., *Rempel v. Nationwide Ins. Co.*, 471 Pa. 404, 370 A.2d 366 (1977). Pennsylvania's reasonable expectations of the insured doctrine has been explained as follows:

> Pennsylvania case law, expressed in *Collister* . . . , and restated in *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 521 A.2d 920 (1987), dictates that *the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured.* . . . In most cases, "the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." *Bensalem Tp.* . . ., 38 F.3d 1303, 1309 (3d Cir. 1994). Courts, however, must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." *Dibble v. Security of Am. Life Ins. Co.*, 404 Pa.Super. 205, 590 A.2d 352, 354 (1991) (quoted in *Bensalem Tp.*, 38 F.3d at 1309). As a result, *even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage*. See *Bensalem Tp.*, 38 F.3d at 1311; see also *Tonkovic*, 513 Pa. at 455, 521 A.2d at 926 (citing *Collister*, 479 Pa. at 594-95, 388 A.2d at 1353-54) (Regardless of the ambiguity or lack thereof, inherent in a conspicuous exclusion provision, courts should assure that the insured's "reasonable expectations are fulfilled.").

In *Tonkovic*, the Pennsylvania Supreme Court expressly applied the doctrine of reasonable expectations. In that case, the insured requested a specific type of insurance coverage and the insurance carrier failed to honor that request, unilaterally limiting the scope of coverage in a conspicuous provision in the policy. The Supreme Court concluded that, regardless of the ambiguity or lack thereof inherent in an insurance policy, courts should ensure that the insured's "reasonable expectations are fulfilled." 513 Pa. at 455, 521 A.2d at 926 (citing *Collister*, 479 Pa. at 594-95, 388 A.2d at 1353-54). Thus, the Court held:

> When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

513 Pa. at 454, 521 A.2d at 925. [FN7]

> [FN7]. Significantly, the court in *Tonkovic* was careful to distinguish its prior decision in *Standard Venetian Blind* . . . noting that "[c]ontrary to the facts in *Venetian Blind*, appellant here specifically requested a type of coverage that would have protected him in this instance. . . ." *Tonkovic*, 513 Pa. at 451, 521 A.2d at 924. Moreover, the court found a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for.

*Id.*, at 454, 521 A.2d at 925. In the latter situation, the *Tonkovic* court observed, there was no reasonable expectation of coverage. *Id*. at 451, 521 A.2d at 923. In light of *Standard Venetian Blind* and *Tonkovic*, Pennsylvania courts have consistently enforced the plain language of exclusions and limitations, despite the insurer's failure to make the insured aware of the provisions, where the circumstances indicate that the insured received exactly the coverage requested. . . .

Additionally . . . *Bensalem Township* . . . examined Pennsylvania law and concluded that, despite an unambiguous exclusion of coverage contained in the insurance policy, Pennsylvania would honor an insured's reasonable expectation of coverage. 38 F.3d at 1311. . . .

Acknowledging Pennsylvania's consistent focus on the reasonable expectations of the insured, we noted that the Pennsylvania Supreme Court had

held that "where . . . an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." *Id*. at 1311 (citing *Tonkovic*, 513 Pa. at 454, 521 A.2d at 925). As a result, we determined that the district court erred when it dismissed the Township's complaint, and concluded that the Township's expectation of coverage would be reasonable, despite the exclusion, if it could demonstrate that the insurer did not change the language of the exclusion until after it had agreed to renew the policy and that the insurer did not notify it of the change in the exclusion or explain the significance of the change. *Id*. at 1312. Unless VE is not entitled to the benefit of the reasonable expectations doctrine, *Bensalem Township* controls here.

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903-904 (3d Cir. 1997) (Becker, CJ; additional citations omitted; emphasis added).

More recently, in *West v. Lincoln Ben. Life Co.*, 509 F.3d 160 (3d. Cir. 2007), the United States Court of Appeals for the Third Circuit offered the following "synthesized standard [as] the truest statement of Pennsylvania law" regarding the doctrine of reasonable expectations:

> Following *Rempel* and *Collister*, . . . insurance case law appeared to diverge under two subsequent decisions by the Pennsylvania Supreme Court: *Standard Venetian Blind Co.* . . ., and *Tonkovic* . . . . *Standard Venetian Blind* adhered to the language of the insurance contract to determine an insurer's obligation to pay, without regard to the expectations of the insured. It did not cite *Collister*. . . . *Standard Venetian Blind* did admonish that "in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance." *Id*. at 567.
>
> The facts of that case, however, did not permit such deviation because the policy limitation at issue was clearly worded and conspicuously displayed. *Id*. The insured, upon application for the policy, requested "full coverage on everything we have." *Id.* at 565. The policy contained standard exclusion provisions, which were clear, unambiguous, and not contrary to law. *Id*. at 566. The insurer did not describe the limitations of the policy, but neither did it misrepresent that the policy had no exclusions or that the exclusions were anything other than what they purported to be. See *id*. To allow the insured "to avoid application of the clear and unambiguous policy limitations in these circumstances would [have required the Supreme Court] to rewrite the parties' written contract," which the court would

12

not do. *Id*. Instead, it sought to "accord proper significance to the written contract, which has historically been the true test of parties' intentions." *Id*. at 567.

By contrast, *Tonkovic* focused on the reasonable expectations of the insured rather than the clear language of the contested policy because the insured specifically requested disability insurance, but was issued a policy that did not include disability insurance. 521 A.2d at 924. *Tonkovic* held that where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." *Id*. at 925. There is "a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested," as the facts of *Tonkovic* demonstrated, and "cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for," as occurred in *Standard Venetian Blind. Id.*; accord *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 13 (Pa.Super.Ct. 2004) (affirming that an insurer has a duty to inform an insured that it issued a policy different from what the insured requested).

. . . In the absence of an affirmative misrepresentation by the insurer or its agent about the contents of the policy, the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured. . . .

An analysis of the reasonable expectations of the insured is rightly employed when a claimant alleges that the insurer engaged in deceptive practices toward the insured, either to misrepresent the terms of the policy or *to issue a policy different than the one requested by the insured and promised by the insurer*. . . . In this context, the clear and unambiguous language in the policy is one aspect of the totality of the circumstances that may lead to the reasonable expectations of the insured. . . . However, "even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage." *Reliance Ins. Co.*, 121 F.3d at 903. "[M]ere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage." *Matcon Diamond, Inc.*, 815 A.2d at 1115.

We believe that this synthesized standard is the truest statement of Pennsylvania law. We have applied it in the past, *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136-37 (3d Cir. 2005); *Reliance Ins. Co.*, 121 F.3d at 903 . . .

13

509 F.3d at 167-69 (additional citations omitted).

### C. Burden of proof - clear and convincing evidence.

"In the reasonable expectations analysis, the insurer must demonstrate that the insured did not have a reasonable expectation of coverage. *Tonkovic*, 521 A.2d at 922, 925; *Bensalem Twp.*, 38 F.3d at 1311." *West*, 509 F.2d at 171. To meet its burden, the insurer must prove by clear and convincing evidence that the insured did not have a reasonable expectation of coverage. *Id.*, citing *Collister*, 479 Pa. 579, 594, 388 A.2d at 1355. "When the party moving for summary judgment bears the burden of proving certain facts by clear and convincing evidence, we must evaluate the facts in support of the motion in light of that evidentiary burden." *West*, 509 F.3d at 171, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

### D. Application and analysis.

The question, thus, is as follows: was it reasonable for defendants to expect that Mr. Alben would be fully covered to the same extent as Ms. McDonald when Ms. McDonald called the Mitchell Agency and informed its staff that she wanted to purchase an insurance policy like the one she had on her Pontiac for the 2003 Chrysler PT Cruiser that both defendants purchased together? In the summary judgment context, the issue is whether Horace Mann has offered clear and convincing evidence sufficient to show that if defendants harbored such an expectation, it was not a reasonable one.

While the details of the telephone conversations in July, 2003 are somewhat hazy, Ms. McDonald is certain that she informed the Mitchell Agency, at least twice, that "Robert and I" were purchasing the vehicle for which she needed insurance and that Robert would be using the vehicle regularly, and plaintiff has no contradictory evidence. It is probable that joint owners of a

vehicle would seek an insurance policy covering each driver/ owner equally, including underinsured motorist coverage, and reasonable to expect that the telephone call to the Mitchell Agency for coverage on a jointly owned vehicle would have accomplished that. Randy Mitchell acknowledged in his deposition that a "named insured" on a policy is one with an ownership interest, and that changing Robert Alben's status from "listed driver" to "insured" would not have increased the premiums for the PT Cruiser.

Thus, defendants' evidence establishes, *prima facie,* the reasonable expectation of the insureds that both owners/drivers would be covered on the policy to the same extent, including the underinsured motorist coverage, making it incumbent on the insurer to show by clear and convincing evidence that defendants could not have maintained a reasonable expectation of such coverage. The insurer is unable to meet that burden by clear and convincing evidence presented to this Court in support of its motion for summary judgment or in opposition to defendants' motion for summary judgment.

The facts that the declarations page of the policy listed Ms. McDonald as "insured" and her and Mr. Alben as "listed drivers," and that Horace Mann issued an insurance card to Ms. McDonald only are insufficient to rebut defendants' reasonable expectation that Ms. McDonald and Mr. Alben were covered equally on the policy of insurance for the car they jointly owned, financed and regularly used.

## V. Conclusion.

Under the foregoing governing Pennsylvania law, therefore, this Court declares that Robert Alben is entitled to underinsured motorist benefits from Horace Mann as a result of any injuries he sustained in the October 14, 2003, motor vehicle accident. Summary judgment will be granted in favor of defendants and against plaintiff, and an appropriate order will be entered.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties